# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **TRACEY CARTER** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-11-CV-456-KC** |
| | § | |
| **JOHN MCHUGH, SECRETARY OF** | § | |
| **THE ARMY D/B/A DEFENSE** | § | |
| **COMMISSARY AGENCY** | § | |
| | § | |
| **Defendant**. | § | |

## ORDER

On this day, the Court considered "Defendant's Motion to Dismiss" ("Motion"), ECF No. 6. For the reasons stated below, the Court **GRANTS** Defendant's Motion.

## I.     BACKGROUND

In this case, Plaintiff brings a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. *See* Pl.'s Original Complaint ("Complaint") 3; Mot. 2. Plaintiff alleges that on July 26, 2009, she slipped and fell on "water that was negligently left on the floor" of the Army's Fort Bliss Commissary. *See* Compl. 2. According to Plaintiff, she suffered bodily injuries, pain and suffering, and mental pain and anguish due to the fall. Compl. 3-4.

On September 1, 2009, Plaintiff filed an administrative claim with the Army. Pl.'s Resp. to Def.'s Mot. to Dismiss ("Response") ¶ 2, ECF No. 7. On March 8, 2011, Lieutenant Colonel Gregory Mathers wrote an offer letter to Plaintiff's attorney ("Offer Letter"). Mot. Ex. 2, ECF No. 6-2. In the Offer Letter, Mathers made a "final offer to settle . . . [for] $5,000." Mot. Ex. 2. Additionally, Mathers explained that "[i]f your client does not accept this offer within thirty (30)

1

days . . . , the offer is withdrawn." Mot. Ex. 2. Finally, Mathers warned about the statue of

limitations: "If the offer is not acceptable, you may file suit in an appropriate U.S. District Court

no later than six months from the date of mailing of this notice. By law, failure to comply with

this time limit forever bars your client from further suit." Mot. Ex. 2.

Plaintiff received the Offer Letter on March 11, 2011. *See* Resp. ¶¶ 2-3. Plaintiff then

filed her Complaint in this Court on November 9, 2011, nearly eight months after Mather's sent

the Offer Letter. Resp. ¶ 3. Plaintiff's attorney explains that he failed to file the Complaint

earlier "because of staff miscommunication." Resp. ¶ 3. Plaintiff's attorney "believed the claim

had been filed on an earlier date but discovered later that it had not been filed." Resp. ¶ 3.

## II.    DISCUSSION

In his Motion, Defendant argues that the Court should dismiss Plaintiff's lawsuit under

the FTCA for failure to timely file this lawsuit in accordance with the statute of limitations. Mot.

2. The FTCA waives the United State's sovereign immunity and allows a plaintiff to sue the

federal government for certain torts committed by government officials acting within the scope

of their employment. 28 U.S.C. § 1346(b)(1); *Smith v. United States*, 507 U.S. 197, 201 (1993).

Before filing an FTCA claim in federal court, the claimant must first present her claim to the

administrative agency allegedly responsible for the wrongful act. 28 U.S.C. § 2675(a). If the

agency fails to resolve the claim or denies the claim, the claimant can then sue in federal court.

*Id.*; *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011)

(per curiam).

In addition to this process, the claimant must abide by the statute of limitations. 28

U.S.C. § 2401(b); *In re FEMA,* 646 F.3d at 189. Title 28 U.S.C. § 2401(b) requires:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

Although phrased in the disjunctive, § 2401(b) requires the claimant to both file the administrative claim within two years and to file the lawsuit in court within six months of the denial. *See In re FEMA,* 646 F.3d at 189 (citing *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001)).

In this case, both parties agree Plaintiff filed her Complaint more than six months after the Army had denied her claim. *See* Mot. 1-2; Resp. ¶¶ 2-3. However, Plaintiff argues dismissal is inappropriate because she is entitled to equitable tolling, or alternatively that the final notice was defective. Resp. ¶ 4. The Court examines each of Plaintiff's arguments in turn.

### A.      Equitable Tolling

Plaintiff argues that the Court should equitably toll the statue of limitations because Defendant failed to notify Plaintiff of her right to request that the Army reconsider its final offer. Mot. ¶ 2. Defendant replies that equitable tolling is not available under the FTCA because the statute of limitations is jurisdictional. Def.'s Reply to Pl.'s Resp. to Mot. to Dismiss ("Reply") 2, ECF No. 8. In the alternative, Defendant argues that even if equitable tolling is available, this case does not warrant equitable tolling. Reply 2-4.

Whether a court can equitably toll the § 2401(b) statute of limitations has confounded

courts and litigants for decades.[1]  *See Santos ex rel. Beato v. United States*, 559 F.3d 189, 194-97 (3d Cir. 2009) (holding equitable tolling is available under the FTCA); *Marley v. United States*, 567 F.3d 1030, 1034-38 (9th Cir. 2009) (holding equitable tolling is unavailable); *Perez v. United States*, 167 F.3d 913, 915-17 (5th Cir. 1999) (holding equitable tolling is available); *Houston v. U.S. Postal Serv.*, 823 F.2d 896, 902 (5th Cir. 1987) (holding equitable tolling is not available).  The Supreme Court of the United States has never decided the issue.[2]  And although the Court of Appeals for the Fifth Circuit has addressed the issue several times, the law is still unsettled.  *Compare In re FEMA,* 646 F.3d at 189 *with Perez*, 167 F.3d at 915-17.

Before 1990, the Fifth Circuit consistently held that courts could not equitably toll the § 2401(b) statute of limitations.  *See Perez,* 167 F.3d at 915-16 (examining the Fifth Circuit precedent).  The general view was "that equitable tolling was never available against the government."  *Id.* at 915-16.  The rationale was that the statute of limitations was a condition upon which the United States waived its sovereign immunity.  *See Houston*, 823 F.2d at 902; Gregory C. Sisk, *The Continuing Drift of Federal Sovereign Immunity Jurisprudence*, 50 Wm. & Mary L. Rev. 517, 544-55 (2008).  In other words, Congress did not waive its sovereign immunity to stale claims, and thus the courts had no jurisdiction over stale claims asserted

---

[1]    "'The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.'"  *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (quoting *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)).

[2]    The Supreme Court has noted that § 2401(b) is a "a condition" of the waiver of sovereign immunity.  *United States v. Kubrick*, 444 U.S. 111, 117 (1979).  This is not dispositive in this case for two reasons.  First, the statement is dicta.  Second, the Supreme Court itself subsequent to *Kubrick* characterized a statute of limitations as a condition of waiver of sovereign immunity but nevertheless allowed equitable tolling.  *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94-96 (1990)).

against the government.  *See Houston*, 823 F.2d at 902.

But the legal landscape shifted in 1990 when the Supreme Court in *Irwin v. Department of Veterans Affairs* held that equitable tolling was allowed in a Title VII claim against the United States.  498 U.S. 89, 95-96 (1990).  The Supreme Court held that there should be no presumption against equitable tolling because once Congress has waived it sovereign immunity, equitable tolling "amounts to little, if any, broadening of the congressional waiver."  *Id.* at 95.  In other words, the Supreme Court directed that courts should not presume that Congress intended to withhold jurisdiction from the courts to adjudicate stale claims, but rather Congress simply wanted stale claims to lose in court.  *See id.* at 94-95.  Indeed, this is how courts generally treat statute of limitations in suits not involving the government as a defendant — the statute of limitations is a defense, not a jurisdictional pre-requisite.  *See* Fed. R. Civ. P. 8(c)(1) (characterizing statue of limitations as an affirmative defense); *Citigroup Inc. v. Federal Ins. Co.*, 649 F.3d 367, 371, 373-34 (5th Cir. 2011) (treating the statute of limitations as an affirmative defense).  Unless there is evidence that Congress intended to withhold power from the courts, the Supreme Court held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States."  *Irwin*, 498 U.S. at 95-96.

The *Irwin* decision led to a shift in the Fifth Circuit.  In *Perez v. United States*, the Fifth Circuit reasoned that *Irwin* called into question the Fifth Circuit's previous holdings that § 2401(b) was jurisdictional.  *Perez*, 167 F.3d at 915-16 (5th Cir. 1999).  Accordingly, the Fifth Circuit re-examined the text and history of § 2401(b), and concluded that neither suggested that Congress intended § 2401(b) to be jurisdictional.  *See id.* at 916-17.  Thus, the court held that §

2401(b) was not jurisdictional, and courts could equitably toll the § 2401(b) statute of limitations. *See id*. at 915, 917.

Although the *Perez* decision appeared to settle the issue, the Fifth Circuit has continued to cite and quote the older cases that held § 2401(b) was jurisdictional without mentioning *Perez*. *See, e.g.*, *Ramming v. United States*, 281 F.3d 158, 165 (5th Cir. 2001) (citing *Houston*, 823 F.2d at 898, 902); *Waggoner v. United States*, 95 Fed. App'x 69, 71 & n.5 (5th Cir. 2004) (quoting *Flory v. United States*, 138 F.3d 157, 159 (5th Cir. 1998)).  Most recently, the Fifth Circuit in *In re FEMA* stated that § 2401(b) was jurisdictional and rejected the plaintiff's argument for equitable tolling.  646 F.3d at 189 (5th Cir. 2011) (citing *Flory*, 138 F.3d at 159).  Similarly, two other courts of appeals have recently examined the issue in depth, and come to opposite conclusions.  *See Santos*, 559 F.3d at 194-97 (3d Cir. 2009) (holding § 2401(b) was not jurisdictional and equitable tolling was available); *Marley*, 567 F.3d at 1034-38 (9th Cir. 2009) (holding § 2401(b) was jurisdictional and equitable tolling was unavailable).

In the meantime, the Supreme Court issued several opinions addressing the use of the term jurisdictional.  *See Henderson ex rel. Henderson v. Shinseki*, --- U.S. ----, 131 S.Ct. 1197, 1202-03 (2011); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. ----, 130 S.Ct. 1237, 1244-45 (2010); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006).  The Supreme Court explained that the phrase jurisdiction "is a word of many, too many, meanings."  *Arbaugh*, 546 U.S. at 510 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 90 (1998)).  Accordingly, the Supreme Court wished to "bring some discipline to the use of this term."  *Shinseki*, 131 S.Ct. at 1202.  And in a recent unanimous opinion, the Supreme Court explained:

Among the types of rules that should not be described as jurisdictional are what

6

> we have called "claim-processing rules." These are rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times. Filing deadlines . . . are quintessential claim-processing rules.

*Id.* at 1203 (citations omitted).

However, the Supreme Court also reiterated that "Congress is free to attach the conditions that go with the jurisdictional label to a rule that we would prefer to call a claim-processing rule." *Id.* Thus, the "bright line rule" is to "see if there is any clear indication that Congress wanted the rule to be jurisdictional." *Id.* (quoting *Arbaugh*, 546 U.S. at 508) (internal quotations omitted). To glean Congress's intent, a court examines (1) whether the text of the statute clearly states the limitation is jurisdictional, (2) whether the structure of the statute suggests the limitation is jurisdictional, and (3) whether a long line of cases or other factors suggest that Congress intended for the limitation to be jurisdictional. *See id.*; *Reed Elsevier,* 130 S.Ct. at 1244-47.

The Supreme Court in *John R. Sand & Gravel Co. v. United States* examined a statue of limitations that is similar to the § 2401(b) statue of limitations at issue in this case. 552 U.S. 130, 132 (2008). Specifically, the statute of limitations at issue in *John R. Sand & Gravel* applied to non-tort money claims filed in the Court of Federal Claims. *Id.* at 132-33 (examining 28 U.S.C. § 2501). Although the Supreme Court recognized that "*Irwin* adopted a 'rebuttable presumption' of equitable tolling," the Supreme Court held that it should not overturn its over one hundred year old precedent holding that the statue of limitations was jurisdictional. *See id.* at 135-39. The Supreme Court rested its decision solely on stare decisis, and thus that case fits neatly into the third factor — whether a long line of cases suggest that Congress intended to follow the course set by the courts. *See Shinseki*, 131 S.Ct. at 1203.

Unlike the statute at issue in *John R. Sand & Gravel*, there is not a long-line of Supreme

Court cases holding that the § 2401(b) statute of limitations is jurisdictional.  As discussed

above, the Supreme Court has never decided whether § 2401(b) is jurisdictional or whether a

court can toll the § 2401(b) statue of limitations.  And the courts of appeals have struggled with

the issue and are divided.  *See, e.g.*, *In re FEMA*, 646 F.3d at 189; *Santos*, 559 F.3d at 194–97;

*Marley*, 567 F.3d at 1034-38; *Perez*, 167 F.3d at 915-17.  Thus, the Court turns to the remaining

two factors, the text and the structure of the statute.

      The text of § 2401(b) does not suggest that Congress intended the statute of limitations to

be jurisdictional.  Section § 2401(b) states:

> A tort claim against the United States shall be forever barred unless it is presented
> in writing to the appropriate Federal agency within two years after such claim
> accrues or unless action is begun within six months after the date of mailing, by
> certified or registered mail, of notice of final denial of the claim by the agency to
> which it was presented.

28 U.S.C. § 2401(b).

This language is typical of a statute of limitations and never mentions jurisdiction.  *See Shinseki*,

131 S.Ct. at 1204 (rejecting that a 120-day filing limit as jurisdictional because the "provision

does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [court]");

*Dunlap v. United States*, No. CV 11–01360–PHX–FJM, 2012 WL 510532, at *4 (D. Ariz. Feb.

16, 2012) (finding 2401(b)'s text suggests it is not jurisdictional, but rather a statue of

limitations); *see also Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 324 (noting that

25 U.S.C. § 15(b) that states "[a]ny action to enforce any cause of action under [the Clayton Act]

shall be *forever barred unless commenced within four years* after the cause of action accrued" is

a statue of limitations) (emphasis added).  Congress did use strong language — "shall be forever

barred" — but the Supreme Court has explained that emphatic language does not necessarily

mean the statute is jurisdictional. *See Arbaugh*, 546 U.S. at 510.

The structure also does not suggest that § 2401(b) is jurisdictional. In the original FTCA that Congress passed in 1946, the statute of limitations and the jurisdictional grants are in separate parts of the bill. Federal Tort Claims Act of 1946, ch. 753, §§ 410(a), 420, 60 Stat. 843, 845. The grant of jurisdiction is in part three of the bill, and the statute of limitations is in part four. *See id.* Given that Congress physically separated the provisions, the structure of the original bill suggests that Congress did not intend the statute of limitations to be jurisdictional. *See Shinseki*, 131 S.Ct. at 1205 (reasoning that a statute's physical separation from the jurisdiction provision suggested that the statute was not jurisdictional).

Moreover, after Congress codified the grant of jurisdiction, Congress amended the jurisdictional provision to state that the "exclusive jurisdiction" of federal district courts over FTCA actions was "[s]ubject to the provisions of chapter 171." Act of May 24, 1949, ch. 139, § 80(b), 63 Stat. 101 (codified as amended at 28 U.S.C. § 1346(b)(1)). This suggests that the provisions of chapter 171 may be jurisdictional because Congress explicitly stated that jurisdiction is "subject" to chapter 171's provisions. *See Mader v. United States*, 654 F.3d 794, 807-08 (8th Cir. 2011) (holding that the FTCA's administrative exhaustion is jurisdictional in part because the provision is in chapter 171). Critically, the § 2401(b) statute of limitations is not in chapter 171. Thus, the structure of the current FTCA suggests that § 2401(b) is not jurisdictional. *See Dunlap v. United States*, No. CV 11–01360–PHX–FJM, 2012 WL 510532, at *4 (D. Ariz. Feb. 16, 2012) ("Because § 2401(b) does not appear within [chapter 171], the structure of the FTCA does not clearly indicate that the time limits imposed by § 2401(b) have jurisdictional impact.")

In conclusion, neither the text of § 2401(b), nor the structure of the FTCA suggests that Congress intended to make § 2401(b) jurisdictional.  And the Supreme Court has not established a long-line of precedent regarding § 2401(b), as was the case with § 2501 in *John R. Sand & Gravel*.

However, there is a long-line of precedent from the Fifth Circuit holding that § 2401(b) is jurisdictional, albeit with a significant departure in the *Perez* decision.  *See Perez*, 167 F.3d at 915-17.  And although the Supreme Court cases above appear applicable and persuasive, it is noteworthy that none of those decisions involved § 2401(b), and two of the cases did not involve the United States as a party.  *See Reed Elsevier,* 130 S.Ct. at 1242; *Arbaugh*, 546 U.S. at 503-04. *But see Shinseki*, 131 S.Ct. at 1201, 1203-05 (applying the analysis explained above to a case in which the defendant was the Secretary of Veteran Affairs).

Fortunately, the Court need not make a definitive holding on this thorny issue to resolve this case because even if equitable tolling is available as the Court suspects, Plaintiff is not entitled to equitable tolling.  "'The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.'"  *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (quoting *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)).  However, "[f]ederal courts have typically extended equitable relief only sparingly." *Irwin,* 498 U.S. at 96; *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

"The plaintiff has the burden to provide justification for equitable tolling."  *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (citing *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995) (per curiam)).  Equitable tolling is available (1) where the plaintiff actively pursued his judicial remedies, but in the wrong forum, (2) where the

plaintiff "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or (3) other extraordinary circumstances. *See Irwin,* 498 U.S. at 96; *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Granger*, 636 F.3d at 712. Although the remedy is based on the equities, courts "are reluctant to apply equitable tolling to situations of attorney error or neglect, because parties are bound by the acts of their lawyer." *Granger*, 636 F.3d at 712 (citing *Coleman v. Thompson*, 501 U.S. 722, 753, (1991); *Wion v. Quarterman*, 567 F.3d 146, 149 (5th Cir. 2009)).

In this case, there is no suggestion that Plaintiff was induced or tricked into letting the deadline pass, or any other extraordinary circumstances that would warrant equitable tolling. Plaintiff explains that she filed her Complaint late "because of staff miscommunication with the attorney of record. The attorney of record believed the claim had been filed on an earlier date but discovered later that it had not been filed." Resp. ¶ 3. This is the type of "attorney error or neglect" that does not warrant equitable tolling. *See Granger*, 636 F.3d at 712; *see also Irwin*, 498 U.S. at 96 (holding lawyer's absence from the office was "at best a garden variety claim of excusable neglect," and thus did not warrant equitable tolling).

Plaintiff attempts to avoid this result by arguing that Defendant failed to inform Plaintiff of her right to request reconsideration as required by 32 C.F.R. § 536.89(b), and thus the Court should toll the statue of limitations. Resp. ¶¶ 5-7. As a preliminary matter, it is not clear that 32 C.F.R. § 536.89(b) applies to this case. Section 536.89(b) states: "[n]otice of disapproval or final offer issued by [a head of area claims office ("ACO head")] will advise the claimant of a right to reconsideration." *Id.* In this case, Lt. Col. Mathers wrote the Offer Letter. Mot. Ex. 2. But there is no indication that Mathers is the head of the area claims office, and Defendant has offered an

uncontradicted affidavit that states "Mathers was not an 'ACO head'" according to the regulation that defines the term.  Reply Ex. Decl. of Evelyn H. Dolan Under Penalty of Perjury ¶ 3, ECF No. 8.  Thus, 32 C.F.R. § 536.89(b) appears inapplicable.

Nevertheless, there is another regulation governing the processing of claims against the Army, 32 C.F.R. § 536.64(b), that states "[a] final offer under [the FTCA] will notify the claimant of the right to sue, not later than six months from the notice's date of mailing, *and of the right to request reconsideration*."  32 C.F.R. § 536.64(b) (emphasis added).  Although neither party mentions or cites § 536.64(b), it appears to mandate notice of the right to reconsideration when the Army denies an FTCA claim.  *See id.*  Therefore, the Court will assume, without deciding, that the regulations required Defendant to notify Plaintiff of her right to reconsideration.

However, even with that assumption, Plaintiff's argument is not persuasive.  Plaintiff asks the Court to allow equitable tolling because of Defendant's mistake, but never explains how notification of the right to reconsideration would have changed the outcome.  There is no suggestion that Plaintiff was late because Defendant failed to tell her about the right to reconsideration.  Rather, Plaintiff admits the cause of the delay was a staff miscommunication.  Resp. ¶ 3.  Therefore, Defendant's alleged error was not the cause of Plaintiff's delay, and thus cannot be her excuse for tardiness.  *See Perez*, 167 F.3d at 919 (holding equitable tolling did apply when "there is a clear causal connection between the government's failure to follow its regulations and the plaintiff's" mistake, but would not necessarily apply "[i]f there had been no causation"); *see also San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) (requiring a "causal connection between the alleged extraordinary circumstances and the late filing of the

12

petition").

**B.     Final Offer**

Finally, Plaintiff argues in the alternative that the statue of limitations was never triggered because the final offer was defective.  Resp. ¶ 20.  According to Plaintiff, the final offer was defective because it failed to tell Plaintiff about her right to request the Army reconsider its final offer.  Resp. ¶ 20.

To constitute a "final denial" or "final offer" for the purposes of triggering the statute of limitations, the written notice must be clear that the decision is final.  *See* 28 U.S.C. § 2401(b); *Martinez v. United States*, 728 F.2d 694, 698 (5th Cir. 1984); *Miller v. United States*, 741 F.2d 148, 150 (7th Cir. 1984).  Additionally, the agency must send the notice "by certified or registered mail."  28 U.S.C. § 2401(b).  Finally, the notice "shall include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification."  28 C.F.R. § 14.9(a); *Martinez,* 728 F.2d at 698.

Here, Defendant's Offer Letter fully complies with those requirements.  First, the Offer Letter was clear that this was a final offer.  The Offer Letter stated that this is "[t]he Government's *final offer* to settle your client's claim is $5,000 . . . . If your client does not accept this offer within thirty (30) days . . . , the offer is withdrawn."  Mot. Ex. 2 (emphasis added). Second, the Offer Letter was in writing and sent by certified mail.  *Id.*  Third, Defendant's Offer Letter explicitly warned that Plaintiff had six months from the date of mailing to sue or else the "time limit forever bars" the lawsuit.  *Id.*  In conclusion, the Offer Letter constituted a final offer. *See Martinez*, 728 F.2d at 698.

Plaintiff responds by arguing that Defendant's Offer Letter was defective because it failed to tell Plaintiff about her right to reconsideration. Resp. ¶ 20. As stated above, Plaintiff may be correct that the regulations required Defendant to inform Plaintiff of her right to request reconsideration. However, even assuming Defendant violated the notice requirement, the violation does not save Plaintiff's FTCA claim for two reasons.

First, Plaintiff provides no law, and the Court has found none, to support the proposition that a failure to notify a claimant about a right to reconsideration makes the notice per se defective. The Fifth Circuit in *Martinez* did find that a notice was defective in part because the agency failed to abide by its own regulations. *See Martinez,* 728 F.2d at 698. But the regulation at issue in *Martinez* ensured the claimant knew to file suit in U.S. District Court, and notice of the deadline is critical to the fair operation of § 2401(b)'s short deadlines. *See id.; see also Dyniewicz v. United States*, 742 F.2d 484, 486 (9th Cir. 1984) (explaining that notice of the six month deadline "provides the claimant with a clear landmark that the claim has been denied and that the six month clock has begun to run"). In contrast, a right to reconsideration is not even contemplated by § 2401(b). Thus, failing to notify a claimant of the right to reconsideration does not appear to be of such importance that a final offer is defective without it.

Second, although an agency must generally follow its own procedures, a violation is typically only fatal when the claimant can show prejudice. *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981) (citing *Pacific Molasses Co. v. Fed. Trade Comm'n*, 356 F.2d 386, 390-91 (5th Cir. 1966); *Alamo Express, Inc. v. United States*, 613 F.2d 96, 98 (5th Cir. 1980)); *Lee Moi Chong vs. INS*, 264 F.3d 378, 390 (3d Cir. 2001); *see also Am. Farm Lines v. Black Ball Freight Serv.,* 397 U.S. 532, 538-39 (1970) ("[T]here is no reason to exempt this case from the general

14

principle that it is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party." (internal quotation and punctuation omitted)). In this case, Plaintiff cannot show prejudice because Plaintiff has never shown the relevance of the right to reconsideration. Nothing suggests that Plaintiff would have requested Defendant reconsider her claim had Defendant notified her of the right to reconsideration. Rather, Plaintiff admits that she failed to timely file in court "because of staff miscommunication with the attorney of record." Resp. ¶ 3. In other words, Defendant's failure to notify Plaintiff of her right to reconsideration had nothing to do with Plaintiff's delay in filing her Complaint. Moreover, Plaintiff would have had only six months to file a request for reconsideration. 28 C.F.R. § 14.9(b); *see* 32 C.F.R. § 536.89(b). There is no suggestion that Plaintiff would have been able to file her request for reconsideration within six months when she was unable to file her claim in court within six months. In sum, Plaintiff has not shown prejudice, and thus cannot rely on a possible violation of the regulations to save her claim.

## III.   CONCLUSION

For the reasons stated above, the Court **GRANTS** "Defendant's Motion to Dismiss," ECF No. 6.

The Clerk shall close the case.

**SO ORDERED**.

**SIGNED** on this 23rd day of April, 2012.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE